The next case on the calendar is Spandex House v. Hartford Fire Insurance. May it please the Court, my name is Richard Shuren and I represent the appellant Spandex House in this matter. At issue in this appeal is the exception to the amended intellectual property exclusion. Spandex House has made a number of arguments in its briefs, and the first argument that I would like to speak about is the argument that the provision is at least ambiguous. Under New York law, the terms of an insurance policy are interpreted according to the expectations and purposes of the ordinary business person. In this case, we submit that an ordinary business person would apply the proper rules of grammar and punctuation to his or her understanding of this clause. And if you read the clause, speaking of the exception, as it is actually written, which an ordinary business person would certainly do, then it should be understood to mean that coverage would be provided for infringement of copyright. I would note that in this regard, the advertising element is still, of course, required since it is still included in the definition of advertising injury. We submit that this is the meaning that an ordinary business person applying the proper rules of grammar and punctuation would give to this particular provision. The accepted rules of grammar and punctuation, in this case, dictate that the clause inserted between the commas, specifically the clause in your advertisement or on your website, is a non-restrictive clause. Indeed, that is why we believe the commas were added. If it was intended to be restrictive, as the Hartford maintains, then there should be no commas. In fact, an interpretation that complies, as I said, with the proper rules of grammar and punctuation should be the default interpretation. We submit that it is the Hartford that is asking this court to disregard those rules of grammar and punctuation, to ignore the commas that it inserted, that the Hartford inserted into its own policy terms. The fact of the matter is that a clause that is both preceded by and followed by a comma is a non-restrictive clause under traditional rules of grammar and punctuation. Excuse me. One more minute of your three minutes. Thank you. Therefore, we submit that it is the Hartford and the district court that are the ones that are rewriting the policy language, not Spandex House. They're the ones that are attempting to remove the commas from the policy that they inserted. And again, to this day, the Hartford has still offered no justification or reason as to why it inserted the commas in the first place. There's nothing in the record to indicate why the Hartford did what it did. We submit that another reasonable way to look at it and give the clause meaning is to consider it non-restrictive and descriptive. That is, it's illustrative of the type of infringement of copyright that results in coverage. With regard to your first argument, is your position that the presence of commas, I mean, the presence of commas does not automatically mean that a clause is non-restrictive, does it? Not automatically, but it's certainly a reasonable interpretation, Your Honor. It's the default, it's the standard way of looking at it according to the ordinary rules of grammar and punctuation. But we would still have to apply text and sense in determining whether the presence or absence of commas, what meaning, whether this grammar rule should trump other signs of meaning that we take from a document, from a clause, right? I mean, I don't, is your argument that invoking this rule automatically creates an ambiguity? No, not automatically necessarily, Your Honor, but in this case it certainly does because as discussed in my brief, the language is so unusual and so strange in the context of insurance law, especially New York insurance law, that it's certainly a reasonable interpretation to apply the accepted rules of grammar as we're suggesting. For example, it contravenes, as the district court even noted, it contravenes some basic tenants of New York insurance law. So we maintain that an insured, a reasonable business person who may be familiar, who should be familiar with some of these basic tenants, which have been in existence for a very long time, it would be reasonable for them as an ordinary business person to apply the accepted rules of grammar and interpret it in the way that we suggest. And as I was saying, if you consider it descriptive as one of the ways in which coverage is provided, then we're certainly giving meaning to the terms. We're not disregarding it. And in this particular case, the underlying suit only pertains to copyright infringement. There is no other intellectual property claim. So I would add that the argument that we're trying to weed out or negate the overall exclusion is incorrect. Any case involving patents or trademark or any other intellectual property claim is still excluded. And in fact, under all reasonable... Well, this is Judge Park. This is Judge Park. Why is that the case? I mean, if you make the phrase in your advertisement or what's in the commas non-restrictive, then wouldn't that mean that the advertising section isn't limited to advertisement? No, because... No, Your Honor. The definition of advertising injury in the very same endorsement, which precedes the exclusion, requires advertising, requires that the infringement relate to your advertising. And you have still all the causation requirements that come into play there. So our reading does not read that out. Interpreting the exception to the exclusion does not change the definition of advertising injury that applies in the endorsement. Are there any cases you can point to that support the idea that the commas offsetting a phrase either create an ambiguity or turn what's inside them into a non-restrictive meaning? Well, we cited a case out of the District of Columbia Circuit, NACS versus Board of Governors, 746 F3rd 474 at 486, where the court goes into great length about a discussion about the use of commas as applied in this case and how it should be presumed to be non-restrictive when it's that case. And there's other cases as well, Your Honor. And I would note that none of the cases that they cite in opposition to our position address this at all. In fact, the cases that they cite don't even deal with commas whatsoever. The other case that I would like to point out, Your Honor, is there's a New York case, Marin versus Constitutional Realty, 28 NY 3rd 666. It's a court of appeals case that specifically addressed this point of grammar and punctuation. And the court of appeals in that case said that a straightforward grammatical analysis would dictate that it's non-restrictive. In that case, there was an engagement agreement that was being interpreted. And the court absolutely considered and found that the clause that was included within the commas was non-restrictive. So we're relying on that. And this is an insurance policy case, of course. And in insurance policy, the standard is much different. The presumptions we submit should be made for the insured. This is, of course, a document that the insured had no role in drafting. And having some experience... Mr. Sharon, you've reserved three minutes of rebuttal. Do you want to use a portion of them now or continue to reserve them? No, thank you. I will reserve them. Thank you very much. Thank you. Good morning, Your Honors. This is Jonathan Freiman of Wigan & Dana on behalf of the appellees. May it please the court. Your Honors, almost exactly four months ago in the Lepore v. Hartford Fire Insurance Company case, this court held that the IP exclusion at issue in this case is clear and enforceable. Now, as Lepore held and as the plaintiff concedes, the IP exclusion means that if there's an allegation of an IP violation in a lawsuit, then there's no coverage for any claim in that suit. The advertising exception at issue in this case provides a very narrow giveback to the IP exclusion. The question here is the scope of the coverage giveback in the advertising exception. And the answer to that question is in the plain text. And as Your Honors know, it says clearly that the IP exclusion, and I'm quoting now, it does not apply if the only allegation in the claim or suit involving any intellectual property right is limited to infringement in your advertising or on your website of copyright. That doesn't describe the Rex action against Spandex House. That case is full of garden variety copyright infringement allegations, copying fabric patterns, making fabrics with those patterns, selling and distributing those fabrics. It's not only about ads or websites to use the language of the policy. It's not limited to ads or websites to use the language of the policy. Now, as you know, because Spandex House can't argue that the words in the advertising exception are ambiguous, they have this two comma argument, which they describe as an old rule of grammar. But we're under New York law here. And I want to focus us on that because New York courts have repeatedly held that the words of an insurance policy or of any contract are read in light of common speech. That's the phrase from the VAM check cashing case from this court a few years ago, quoting a New York Court of Appeals decision from a little earlier. And New York law directs courts to look to punctuation or grammar only if the words themselves are already ambiguous, not to create ambiguity. That's the Banco Espirito case and others. You have one minute left of your first three. Thank you. There's no ambiguity in the words here, only limited to infringement in your advertisement or on your website of copyright. Spandex House also argues that Hartford should provide coverage because they speculate that maybe someday the allegations could change radically so that Rex was claiming only copyright infringement in an ad or on a website. The district court properly rejected their invitation to decide whether there would be of the record in the present case now, not on the basis of speculation. Moreover, Spandex House doesn't give any reason to think that there's a reasonable possibility, the standard under New York law, of that ever happening. So this court... Is that what you think? Should that be the standard? Is there a reasonable possibility of that happening? I believe that is the standard under Fieldston, Your Honor, which is a 2011 case of the New York Court of Appeals. But the main question is sort of the question of time. Do we look at the record as it is now, or do we speculate about what it could be in the future? And in the cases like Fieldston, what's happening is there are potentially covered claims and insurers are saying, well, we don't think that those are legitimate and they're not really going to go anywhere. Well, that's why I ask whether it would necessarily be the Fieldston standard, because this is an unusual case, isn't it, where if we agree with your interpretation of the contract and we say that, well, this would be excluded, and we're assessing the factual possibility, or the exclusion would apply, and we're assessing the factual possibility, what happens if the suit transforms as a factual matter and all these other claims drop out? Right. And I would say, Your Honor, there are two choices that would be available to this court, both of which would leave permits. The first would be to say, well, we're going to apply the Fieldston standard, and there is no reasonable possibility here because it's just pure speculation having nothing to do with the underlying record. The other is to say, no, we're really outside of Fieldston because this is not a case where we have actually potentially covered claims that the insurer is asserting are spurious and we have to analyze as to whether there is any reasonable possibility. This is a case where right now there simply are no covered claims, full stop. So we're not in the Fieldston box. We're just in the no coverage conclusion, and that's all we need to do. I think the simpler and better course is the latter one, but this court certainly could take the Fieldston approach. So what do the commas do, going back to the phrase in your advertisement? What's the grammatical purpose or construction there? Well, I'd say a couple of things, Judge Bargmann. First of all, as I said, the grammar can't create ambiguity. So unless you think the text is already ambiguous, then it doesn't matter what the commas, where the commas are here under New York law. But I would say the commas do what they do in the 26th Amendment, as we pointed out in our briefs. The commas are just suggesting to the reader of the clause where to pause. People use commas like that all the time. Now, the cases that they're citing from outside of New York, from the DC Circuit, from Massachusetts, are cases that are citing some style manuals, the Chicago Manual of Style, that sort of thing. And as you know, as a matter of language, style manuals are manuals that tell people how the writers of the style manuals think they ought to write. What's a better way of writing? We've all been told we should read more strunk and white. It doesn't describe how people actually write. It doesn't describe what people mean when they write in the way that they actually do. And the purpose of contract law under New York is to figure out what's the common meaning. The common meaning, that's the VAM check cashing case. And the common meaning is just like it was with the framers of the 26th Amendment, just pause. We're emphasizing this here. Any suit involving any intellectual property right is limited to infringement, pause. In your advertisement or on your website, pause of copyright. It doesn't somehow erase it. Their view is that commas on either end operate as a giant pink eraser that make the words disappear entirely. And they make not just those words disappear, but they make the word only disappear. And they make the word limited disappear. This is plain text. The grammar doesn't create an ambiguity. The grammar is consistent with the ordinary usage of ordinary people and with the framers of an amendment to the Constitution itself. There's no reason for this court to pause on the grammar argument made by the other side. If there are no further questions, I'll rest. Thank you, Mr. Freeman. Thank you. Mr. Sheeran, rebuttal. Yes, thank you, Your Honors. I would like to address the reasonable possibility argument right now. The law in New York is that the duty to defend is conditioned on the possibility of recovery, not on the probability of recovery. And there's many cases in New York where the say the possibility of recovery, no matter how remote, triggers the duty to defend. And this case is very unique in that the district court dismissed it without prejudice. Therefore, the district court judge, in our opinion, recognized the possibility that the case could be possibly created coverage. Let's say for the moment that we agreed with your adversaries' interpretation of the exclusion and believed that it applied in this case at present. He argues that the proper determination then is not even to apply Fieldson, to just say there's no coverage. Why isn't that correct? And is it clear that Fieldson would apply in this context, or that some other test might be appropriate in a context where you make a determination that there's no coverage now, but there might be a conceivable coverage in the future if the lawsuit were to change dramatically? I know that's not your argument, but I guess I'm just asking for help in understanding that possibility. Sure. I would say that Fieldson, in no other case, changed the basic rule that an insurer must consider whatever's in the complaint and also whatever other information is provided to it that may indicate a basis for coverage. That's Fitzpatrick. Fitzpatrick hasn't been overruled. Fitzpatrick is the insurer has an obligation to consider all of the facts that are presented to it. And in this case, I would say that what makes this case unique and different from all of the other cases that they cite in their brief is that the plaintiff in the underlying case has already alleged the basis for coverage. The plaintiff in the underlying case has already alleged the necessary facts to establish coverage. Therefore, we submit that this case is much more similar or analogous to Bridge Metal and other exclusions where the plaintiff in the underlying case asserted facts that would trigger the exclusion, but it was uncertain as to what was going to happen in the future. In Bridge Metal and other cases, the court said, so long as it is possible, in that case it was a trademark case, so long as it's possible for the insured to be liable for non-willful infringement, which would be covered, we don't care. We're not going to consider what the plaintiff is alleging, all the acts of intentionality that the plaintiff is alleging. We're not in a place to judge the merits of those claims. And I think the same is true here. The district court clearly erred in our opinion by judging whether or not the advertising claims were going to be the only ones left. For example, we asserted the first sale defense. If we're successful in the first sale defense in the underlying case, all of the allegations concerning sale and manufacturing and everything else are going to be wiped out and all that will be left is advertising. So it's very real. It's certainly reasonably possible. And the standard is reasonably possible no matter how remote. So we submit under that standard, field spend and all the other cases that they rely upon fall to the wayside. It's really basic. We purchased litigation insurance and it's reasonably possible for there to be coverage at the end of this case. As happens in most cases, at the end of the case, certain allegations fall by the wayside. They're either dismissed or withdrawn or whatever. And there's a huge body of case law that says that... But wouldn't the effect... I think we've run out of time, but wouldn't the effect of that being say, if we accept your adversary's interpretation of the contract, that would mean that you can never write a clear exclusion and have the intent of the parties as expressed in that contract apply? I don't understand. My response to that, Your Honor, would be they could have clearly said in this endorsement that this endorsement limits the duty to defend. Other insurers do that. They didn't do that. There's no reason for an insured or even an insurance lawyer to look at this and assume that this is primarily directed at the duty to defend and not coverage and indemnification. There are many cases, and they cite them in their brief, where the issue of allegations, surviving allegations comes into play with respect to coverage and indemnification. And it is reasonable for an insurer to say, I don't want to have to cover a claim when we don't know what the cause was or it's not determined what the cause is. So it's reasonable to read that what they wrote as primarily pertaining to coverage issues and indemnification and not the duty to defend, which of course is much, much broader. And if they wanted to focus on the duty to defend, they should have said that more clearly. Thank you, Your Honor. Thank you both. I hope I answered your question. Yes. Yes, you did. Nicely done on both sides. Very, very helpful. We'll take the matter under advisement and then